<hr/>

## THE STATE vs. MORRIN.

*October 3—October 20, 1908.*

*Indians: Abrogation of treaties: Right to hunt and fish: Subjection to state laws.*

· 1. Congress has power to abrogate the provisions of an Indian treaty.
 2. The act of Congress admitting Wisconsin into the Union on an equal footing with the other states abrogated the stipulations of the treaty of March 28, 1843, with the Chippewa Indians respecting their right to hunt and fish within the borders of the state, so that they were thereafter subject to the laws of the

state in that regard; and the treaty of September 30, 1854, giving to the Indians residing in the territory thereby ceded the right to hunt and fish therein, does not operate to exempt from the state laws an Indian who, under the act of Congress of February 8, 1887, has become a citizen of the United States and of this state.

EXCEPTIONS from the circuit court for Ashland county: E. RAY STEVENS, Judge. *Overruled.*

On August 16, 1907, the defendant was convicted, under ch. 489, Laws of 1905, and the acts amendatory thereof, of setting, placing, using, and causing to be set, placed, and used, gill nets and pond nets for trapping fish in the waters of Lake Superior along the south shore thereof and within one mile of the main shore of said Lake Superior, said nets not being minnow seines not more than twenty feet in length or five feet in depth, or minnow dip nets not more than six feet in diameter. The information charges that defendant violated the provisions of the law above described.

The case was tried upon a stipulated statement of facts, which set out that the defendant is a Chippewa Indian, born within the jurisdiction of the United States and residing within the territory ceded by the Chippewa Indians of Lake Superior and the Mississippi to the United States under a treaty of September 30, 1854 (10 U. S. Stats. at Large, 1109). He became a citizen of the United States by virtue of sec. 6 of the act of Congress of February 8, 1887 (24 U. S. Stats. at Large, 390, ch. 119), and for more than five years last past has exercised the rights of a citizen and has voted at elections in Bayfield county during that period. It is agreed that defendant used the nets seized in this action and that he set them in the outlying waters of Lake Superior, in Red Cliff Bay, within one mile of the shore line of Bayfield county. Defendant does not reside within the boundaries of any Indian reservation, but resides in the village of Bayfield, Bayfield county, where he owns real estate upon which he pays taxes. The treaty under the provisions of

which the defendant claims exemption from the fishing laws of Wisconsin provides that such of the Indians as resided in the territory ceded therein should "have the right to hunt and fish therein until otherwise ordered by the President."

The court refused to direct a verdict in favor of defendant upon the stipulated facts and he was found guilty. The case is certified to this court under sec. 4720, Stats. (1898), upon summary exceptions to the court's rulings.

The cause was submitted for the plaintiff on the brief of the *Attorney General* and *A. C. Titus,* first assistant attorney general, and for the defendant on a brief signed by *W. M. Tomkins.*

For the plaintiff it was argued, among other things, that as to the provision for hunting and fishing in such ceded territory contained in the treaty of 1854, made after the state was admitted, the federal government at that time, which was after the admission of the state, had lost jurisdiction—had no power or authority to insert such provision in the treaty, and that such provision is void as against the state or the laws of the state regulating the hunting or catching game and fish. *People v. Bootman,* 180 N. Y. 1, 7, 8; *Geer v. Connecticut,* 161 U. S. 519; *State v. Nergaard,* 124 Wis. 414; *Ward v. Race Horse,* 163 U. S. 504, 507. The state holds title to fish and game within its boundaries as a trustee for the people. *Rossmiller v. State,* 114 Wis. 169, 186; *Roberts v. Fullerton,* 117 Wis. 222. It can neither dispose of such property nor abdicate the trust, nor grant to one person special privileges in relation thereto, and it has never conferred upon the United States authority to control the game and fish within the boundaries of the state nor to grant special privileges or rights in respect thereto either to Indians or others. Authority not conferred on the United States by the federal constitution is reserved by and to the several states.

Counsel for defendant cited *U. S. v. Thomas,* 151 U. S.

577; *Wisconsin v. Hitchcock,* 201 U. S. 202; *Starr v. Campbell,* 208 U. S. 527 (52 L. ed. 602); *Ward v. Race Horse* (dissenting opinion by BROWN, J.), 163 U. S. 504; *Hauenstein v. Lynham,* 100 U. S. 483; *Chew Heong v. U. S.* 112 U. S. 536, 549, 5 Sup. Ct. 255.

SIEBECKER, J.   The only question presented is whether the fish and game laws apply to the defendant, a Chippewa Indian, born within the jurisdiction of the United States and residing within the territory ceded by the Chippewa Indians to the United States by the treaty of September 30, 1854.   It is urged that the defendant is not subject to the laws of this state because of an article in the treaty proclaimed March 28, 1843 (7 U. S. Stats. at Large, 592, art. 2), respecting this territory, and made between the United States and the Chippewa Indians, which article provides:

"The Indians stipulate for the right of hunting on the ceded territory, with the other usual privileges of occupancy, until required to remove by the President of the United States, and that the laws of the United States shall be continued in force in respect to their trade and intercourse with the whites, until otherwise ordered by Congress."

The treaty of September 30, 1854, provides that those Indians who reside in the territory ceded shall have the right to hunt and fish therein until otherwise ordered by the President.

No claim is made but that this state has the power to regulate the taking of fish from the waters within the boundaries of the state, unless such right was reserved to the national government when the state was admitted into the Union. We deem the question presented in this case has been determined by the following decisions of the federal supreme court: *Ward v. Race Horse,* 163 U. S. 504, 16 Sup. Ct. 1076; *Dick v. U. S.* 208 U. S. 340, 28 Sup. Ct. 399; *Geer v. Connecticut,* 161 U. S. 519, 16 Sup. Ct. 600.

The power of Congress to abrogate treaties with Indians was declared in the case of *Lone Wolf v. Hitchcock,* 187 U. S. 553, 23 Sup. Ct. 216.   It is there held:

"The power exists to abrogate the provisions of an Indian treaty, though presumably such power will be exercised only when circumstances arise which will not only justify the government in disregarding the stipulations of the treaty, but may demand, in the interest of the country and the Indians themselves, that it should do so."

In *Ward v. Race Horse, supra,* it is held that an act of Congress which admits a state into the Union, and declares without reservation that such state shall have all the powers of the other states of the Union, is an abrogation of a previous treaty stipulation with Indians within the territory of such state respecting their right to fish and hunt.   The court holds that to exempt such Indians from state laws regulating hunting and fishing within the borders of a state after its admission into the Union would deprive the state of its sovereign power to regulate the rights of hunting and fishing, and would deny to such state admission into the Union on an equal footing with the original states, upon the ground that a treaty with the national government giving the right to hunt and fish within territory which subsequently is embraced within the limits of a state is a privilege in conflict with the act of admitting the state into the Union on an equality with the other states and is repealed thereby.   The instant case presents such a situation, and it follows that the stipulations in the treaty with the Chippewa Indians respecting their right to hunt and fish within the borders of this state were abrogated by the act of Congress admitting the state into the Union and making no reservation as to such rights.

It also appears under the facts that the defendant has become a citizen of the United States by virtue of and pursuant to sec. 6 of the act of Congress of February 8, 1887.   Under the provisions of this act an Indian who has received an allot-

ment and patent for land thereby becomes a citizen of the United States and of the state wherein he resides, and is to have the benefit of and be subject to the laws, both civil and criminal, of the state or territory in which he may reside. Under these circumstances the defendant has acquired a citizenship in this state. In view of this fact, we cannot perceive how he can claim immunity from the criminal law of this state. His status is like that of every other citizen, and subjects him to penalties for the violation of any state law. *Matter of Heff,* 197 U. S. 488, 25 Sup. Ct. 506, and cases there cited. We are of the opinion that the defendant was legally convicted of the offense charged.

*By the Court.*—The exceptions of the defendant are overruled, and the cause remanded with directions to the circuit court to proceed to judgment against the defendant.