# LAKE HARRIET STATE BANK OF MINNEAPOLIS v. F. J. VENIE AND OTHERS.[1]

November 23, 1917.

No. 20,477.

**Corporation — contract with promoter — findings supported by evidence.**

1. The findings to the effect that 'plaintiff's bank building had been erected and the site therefor purchased by defendant F. J. Venie, pursuant to agreements between himself and the other promoters that he should make such purchase and erect such building and be repaid the actual cost thereof, and that such agreements had been ratified after the incorporation of plaintiff, are sustained by the evidence.

**Same — promoter not entitled to more than sum expended.**

2. Venie having been repaid all the advancements and expenditures made by him, is not entitled to retain any part of the lot purchased for the bank, nor the proceeds of that part of the lot which by agreement among the promoters was sold, after such purchase, to reduce the amount which the bank would be called upon to pay.

**Same.**

3. In settling his account for expenditures, Venie could not represent both himself and the bank; and the bank is entitled to recover the excess above the amount expended which, as president of the bank, he had caused to be credited to himself on account of such expenditures, and subsequently withdrew from the funds of the bank.

**Same — legal title held for plaintiff.**

4. He conveyed the legal title to a part of the lot to defendant, Harriet Loan & Realty Company, but, as that company stands in his shoes, plaintiff is entitled to a conveyance thereof.

**Same — plaintiff entitled to recover amount withdrawn.**

5. A note having been executed to Venie by the Realty Company without consideration, and he, while president of the bank and without other authority having placed this note, unindorsed, among the assets of the bank and withdrawn the amount thereof from the funds of the bank, the bank had the right to repudiate the transaction and recover from him the amount so withdrawn.

[1]Reported in 165 N. W. 225.

**Corporation — when directors are liable for losses.**

6. Directors of a corporation are liable for losses resulting from abuse of their authority, or gross neglect of their duties; and the individual defendants, having violated their duty as directors by authorizing Venie to appropriate to himself funds of the bank to which they knew or ought to have known that he was not entitled, and such funds having become lost to the bank, they are liable therefor.

Action in the district court for Hennepin county against the directors of plaintiff bank for an accounting for their acts as directors, to recover certain moneys received by them, and to have plaintiff declared the owner of certain real estate. The case was tried before Jelley, J., who made findings and ordered judgment in favor of plaintiff for $1,005, and for $1,500 in addition against defendant F. J. Venie. From the judgment entered pursuant to the order for judgment, defendants appealed. Affirmed.

*Albert L. Hershman,* for appellants.
*McDowell & Fosseen,* for respondent.

TAYLOR, C.

Defendants appeal from a judgment in favor of plaintiff. The findings of fact upon which the judgment is based cover 20 printed pages, and we shall not attempt to give a summary of them, but merely to outline the situation sufficiently to indicate the questions presented. The only exhibits returned to this court are those contained in a supplemental record printed by plaintiff, and consequently we must assume that the findings, so far as they are based upon the exhibits not returned, are sustained thereby. Beginning in January, 1913, defendant F. J. Venie sought to interest various parties in the project of establishing a state bank in the vicinity of Lake Harriet in the city of Minneapolis, and continued his efforts until they resulted in the organization of plaintiff bank on May 13, 1914, with Venie as its president. After he had induced several parties to join with him in the project and to agree to take stock in the proposed bank, an arrangement was made between them by which he purchased, as a site for the bank, a corner lot 128 feet in length by 58 feet in width with a dwelling house thereon, known as the Peck lot, for the sum of $6,500, of which $5,000 was secured

by a mortgage upon the land bearing interest at the rate of five and one-half per cent per annum, $960 was to be paid by issuing to the vendors stock of that value in the bank when organized, $400 was to be paid on the delivery of the deed, and $140 on execution of the contract for deed. The contract bore date February 27, 1913, and the deed to Venie was received April 3, 1913. In July, 1913, Venie, on behalf of the bank and himself, made a contract by which he sold the rear or east 68 feet of the lot to the Tri-State Telephone Company, and by which the telephone company agreed to pay $3,410 therefor, and also agreed to remove the dwelling house then on the lot to another lot, and to pay a further sum of one-half the net amount realized from the sale of the dwelling house. This contract was carried out, and $1,500 was realized from the sale of the dwelling house, one-half of which, or $750, was paid to Venie in September, 1914, as hereinafter stated. On August 2, 1913, Venie purporting to act "for and on behalf of the Lake Harriet State Bank then organizing," contracted for the erection of a bank building on the west 60 feet of the lot, the building to be completed by December 1, 1913. The building was constructed but was not completed until the following spring, and the sum of $191 was deducted from the contract price as damages for the delay. In December, 1913, Venie conveyed the west 60 feet of the lot, including the bank building, to the Harriet Loan & Realty Company, a corporation which he managed and controlled. On April 24, 1914, Venie caused the Harriet Loan & Realty Company to give a note secured by a mortgage upon the portion of the lot occupied by the bank building to the Minnesota Loan & Trust Company for $5,500, and satisfied the original purchase money mortgage of $5,000 above mentioned out of this loan and credited the remainder thereof to plaintiff bank. On May 9, 1914, the Harriet Loan & Realty Company executed a note and mortgage to Venie for $1,500, the mortgage covering all that part of the west 60 feet of the lot not actually occupied by the bank building. Shortly after the bank was opened for business, Venie, without indorsing it, placed this note in the bank and withdrew the amount of it from the bank funds. He also assigned the mortgage to the bank and placed the assignment on record. Before the bank had opened for business, Venie caused the Harriet Loan & Realty Company to execute a deed, of date May 11, 1914, to

the bank for that part of the west 60 feet of the lot, and only that part thereof, actually occupied by the bank building, and placed this deed on record without the knowledge or consent of any of the other bank officials. In September, 1914, and while he was president of the bank, Venie rendered an account to the bank in which he charged the bank with the contract price of the Peck lot, with the contract price for the erection of the bank building, and with all other expenditures made by him on account of either the lot or the building, including the interest paid upon the mortgage given for the deferred part of the purchase price of the lot. In addition to the interest actually paid upon this mortgage, Venie charged the bank with the further sum of $255.06 as interest upon the purchase price of the lot, being the difference between the amount of interest actually paid by him and the interest upon $6,500, the entire purchase price of the lot, at the rate of 7 per centum per annum. Venie credited the bank with the $3,410 received from the telephone company and with various other items, but did not credit the bank with the $750 due from the telephone company as one-half the net proceeds from the sale of the dwelling house, nor with the $191, deducted from the contract price for erecting the bank building. This statement of account was the only thing ever presented by him to the bank in support of his claim to the sum of $7,500 which, without authority from the directors, he had credited to himself upon the books of the bank at the time it opened for business, and subsequently withdrew from its funds.

The trial court held that the bank was the owner of the west 60 feet of the Peck lot, and directed a conveyance to the bank of all that part thereof not already conveyed to it. The court further held that the bank was entitled to recover from Venie the $1,500 which he had withdrawn from its funds for the note executed by the Harriet Loan & Realty Company, and directed that upon payment thereof the note, but not the mortgage securing it, be returned to him. The court further held that the bank was entitled to recover from Venie the $750 received by him from the proceeds of the sale of the dwelling house removed from the lot, the $191 allowed as damages for failure to complete the bank building on time, and the $255.06 which he had charged as interest over and above the amount which he had paid as interest.

In his answer and at the trial, Venie took the position that he had purchased the Peck lot and erected the bank building on his own account and at his own expense; that all of the lot not included in the deed to the bank and all the profits derived from the deal with the telephone company belonged to him personally, and that he had sold the building and the ground upon which it stood to the bank for $13,000, of which $5,500 was represented by the mortgage upon the property and $7,500 by the credit to him upon the books of the bank. His principal contention upon this appeal is that the arrangements and agreements between himself and the other prospective stockholders of the bank in respect to the selection and purchase of the Peck lot, in respect to the part thereof that should be sold, in respect to the deal with the telephone company, and in respect to the erection of the bank building, were not binding upon the bank after it was incorporated and organized, and consequently were not binding upon him; and that the evidence offered to prove these arrangements and agreements should have been excluded and can be given no effect. Conceding that these agreements would not be binding upon the bank unless ratified and confirmed by it after its incorporation, yet the evidence is ample to show that after its organization both the bank and Venie acted upon the theory that these agreements were valid and binding and thereby assented to and ratified them.

The Peck lot was purchased and the bank building erected thereon pursuant to an agreement between Venie and the others who then expected to become stockholders in the bank to the effect that Venie should purchase this lot and erect the building; that he should convey the property to the bank as soon as it was incorporated; and that he should render 'an account to the bank showing the actual cost of the property, and should be repaid such actual cost. The sale of a part of the lot to the telephone company was arranged and approved by the same parties for the purpose of 'lessening the amount which the bank would be called upon to pay, and with the understanding that the remainder of the lot would be conveyed to the bank. Venie apparently made the cash payments of $540 to the owners of the lot out of his own money. He made the payments for the building in part out of his own money, in part out of the money paid by the telephone company, and in part out of money

received by him from prospective stockholders as advance payments upon the stock to be issued to them when the bank was organized.

Pursuant to the previous arrangements made on its behalf by the promoters and without any other or new agreement, the bank issued its stock of the value of $960 to the former owners of the lot as a part of the purchase price of the lot, issued its stock to the several stock subscribers for the amounts which they had advanced upon their subscriptions during the construction of the building, took possession of the building when completed and has ever since occupied it as its place of business, and permitted Venie to take credit for and withdraw from its funds the full amount of all his expenditures without questioning its liability therefor. These facts, mostly undisputed, and, so far as disputed, found by the court upon sufficient evidence, are sufficient to sustain the finding of the court to the effect that the agreements made in behalf of the bank by its promoters had been ratified and confirmed by both the bank and Venie after its incorporation. That the above mentioned stock was charged to Venie's account on the books of the bank is of no special significance, as he had received and used the money paid therefor by the stock subscribers, and was credited with the purchase price of the lot in the full sum of $6,500. None of the agreements made or assented to by the several promoters were ever repudiated in any way by the bank, and no other or different arrangements or agreements were ever made, or attempted to be made, except as hereafter stated.

Instead of conveying the entire west 60 feet of the Peck lot to the bank as contemplated by the agreement to which all parties had assented, Venie caused the Harriet Loan & Realty Company, which in this matter was merely an instrumentality made use of by him for the purpose of handling the property, to execute a deed to the bank of only that part of the lot actually covered by the bank building, and as president of the bank he assumed to accept it on behalf of the bank. In doing so he was not carrying out the prior agreement, but was attempting to satisfy that agreement by conveying only a part of the property in order to retain the remainder for his own benefit. The court found upon sufficient evidence that none of the other bank officials had anything to do with this transaction or even knew of it. In such a trans-

action, Venie could not represent both the bank and himself, and the bank is not bound by his acts and is entitled to enforce the original agreement. Rhodes v. Webb, 24 Minn. 292; Atwater v. Smith, 73 Minn. 507, 76 N. W. 253; State Bank of Isanti v. Mutual Tel. Co. 123 Minn. 314, 143 N. W. 912, Ann. Cas. 1915A, 1082.

The contract with the telephone company recognized the bank as a party thereto, and when Venie applied for one-half the proceeds from the sale of the dwelling house, the telephone company, for that reason, had declined to pay it to him until authorized to do so by the directors of the bank.

Venie, as president of the bank, called a meeting of the board of directors for September 8, 1914. The directors present at this meeting were: W. J. Smith, L. L. Vrooman, and defendants F. J. Venie, John Devney, J. J. Venie and George H. Venie. George H. Venie is the brother of F. J. Venie, J. J. Venie is his father and John Devney is his father-in-law. Venie had prepared a lengthy resolution which he caused his brother, George H. Venie, to move for adoption at this meeting. The resolution recited that he had expended much time and money in organizing the bank, and had saved the bank large amounts in the purchase of the site, in the erection of the bank building, and in procuring the bank fixtures, as shown by the accounts which he had rendered, and directed that in consideration thereof the bank should convey to him all the interest of the bank in the proceeds of the dwelling house removed from the Peck lot, and in all that part of the west 60 feet of the Peck lot not actually occupied by the bank building. This resolution was so vigorously opposed by Smith and Vrooman that action thereon was deferred and the meeting adjourned until the next day. On the next day, Devney, J. J. Venie and George H. Venie voted for the resolution and Smith and Vrooman against it, and F. J. Venie as the presiding officer declared it carried. At this same meeting Devney moved that the accounts for the bank lot and bank building rendered by F. J. Venie be approved, and Devney, J. J. Venie and George H. Venie having voted for the motion, F. J. Venie declared it carried. By approving these accounts, the directors named, among other items, approved and allowed to Venie the sum of $255.06, which he had credited to himself as interest over

and above the amount which he had paid as interest. Shortly after this meeting, Venie presented to the telephone company a copy of the resolution adopted at the meeting, and thereupon the telephone company paid him $750 as one-half the proceeds of the dwelling house.

The Harriet Loan & Realty Company seems to have been organized by Venie as a sort of holding company for such property as he and his relatives saw fit to convey to it. He and his relatives held all the stock, except two shares issued without consideration to nominal officers, and he exercised absolute control and management of it, and used it merely as an agency in the furtherance of his projects. In December, 1913, he conveyed the west 60 feet of the Peck lot to this company, but the company gave no consideration for it, and clearly has no greater rights in it than Venie possessed. In May, 1914, he caused the company; by his wife as president and a nominal secretary, to execute to him the note for $1,500 previously mentioned, and to secure it by a mortgage upon that part of the west 60 feet of the Peck lot not occupied by the bank building. There was no consideration for this note other than the prior conveyance of the lot to the company. Without authority from the directors of the bank or from any one authorized by them to pass upon such matters, Venie placed the note, unindorsed, among the notes of the bank, and took the amount of it from the funds of the bank. The bank was not a bona fide purchaser of the note, and it was subject to any defenses which the realty company had against it. The land upon which it was secured belonged in equity to the bank and not to Venie or the realty company, and the note was in fact without consideration so far as the realty company was concerned. The bank unquestionably had the right to repudiate this transaction.

The trial court also held that the bank was entitled to recover from Devney, J. J. Venie and George H. Venie, the $750 paid to Venie by the telephone company upon the resolution adopted by them, and the $255.06 allowed to him as interest over and above the amount which he had paid as interest.

The directors of a corporation occupy a fiduciary relation to it which imposes upon them the duty to use the authority given them solely for the benefit of the corporation and its stockholders, and to exercise ordinary business care and diligence to see that its property is not

wasted nor taken from it upon unfounded claims. The law does not permit them to appropriate such property to themselves nor give it to others; and if they waste it, or apply it in payment of claims which they have no authority to pay, or by negligent inattention to their duties suffer others to appropriate it without right, they are liable to the corporation for any losses resulting from such misuse of authority or neglect of duty. Jones v. Morrison, 31 Minn. 140, 16 N. W. 854; Horn Silver Mining Co. v. Ryan, 42 Minn. 196, 44 N. W. 56; National Power & Paper Co. v. Rossman, 122 Minn. 355, 142 N. W. 818, Ann. Cas. 1914D, 830; Mower v. Staples, 32 Minn. 284, 20 N. W. 225; 7 R. C. L. 473, § 454.

The court found and it is practically admitted, that, "J. J. Venie, George H. Venie and John Devney, and neither of them, paid any attention whatever to the affairs and business of said bank and only acted at the instance of and as directed by said F. J. Venie." The court made other findings to the effect that they had violated their trust by relinquishing to Venie the $750 in the hands of the telephone company which belonged to the bank, and by approving and allowing his account after they were chargeable with notice that it contained the unwarranted charge of $255.06 for interest, in addition to the interest actually paid; and that Venie was then solvent but had since become insolvent, and was still insolvent at the time of the trial.

We are satisfied that the trial court reached the correct conclusions; that its findings of fact, so far as material, are sustained by the evidence; and that these findings justify its conclusions of law.

The judgment is affirmed.