SAMUEL COHEN AND ANOTHER v. JAMES F. GOULD AND ANOTHER.[1]

December 5, 1930.

No. 28,055.

*Henry N. Benson,* Attorney General, and *Chester S. Wilson,* Assistant Attorney General, for appellants.

*Toivonen & Harri* and *George Nordlin,* for respondents.

LORING, J.

In a replevin suit to recover the possession of 680 muskrat skins the plaintiffs had a verdict, and the defendants have appealed from an order denying their motion for judgment notwithstanding the verdict or for a new trial.

The plaintiffs are engaged in the manufacture and sale of fur garments at Duluth, Minnesota, under the name of the Hudson Bay Fur Company. They had in their employ a purchasing agent named Symons who bought furs for them in northern Wisconsin. To escape the inspection of the Minnesota game and fish department they established a warehouse at Superior, Wisconsin, to which were brought the furs purchased in that state. Early in November, 1926, Symons purchased from one Koeppen, at Shawano, Wisconsin, 987 muskrat skins. He also purchased from other persons about 500 other muskrat skins, all of which he took to the warehouse at Superior. There were probably other skins stored in this warehouse; but, however that may be, the plaintiff Joseph Cohn, acting

[1]Reported in 233 N. W. 585.

for his firm, in December of that year, selected from the entire lot at the Superior warehouse 680 skins which he shipped to a firm in Minneapolis for the purpose of having them dressed, after which they were to be shipped to the plaintiffs' Duluth establishment to be manufactured into coats.

When the skins arrived in Minneapolis they were seized by the defendants as officers of the Minnesota game and fish department on the ground that they were accompanied by no evidence that they had been legally taken in Wisconsin, nor was there any evidence of their origin in that state. Among the skins were some that showed that the muskrats had been killed by shooting and others that showed that they had been killed by spearing contrary to the laws of the state of Wisconsin, except when such shooting or spearing is done by Indians upon Indian reservations. An investigation was then conducted by the Minnesota game and fish department in an endeavor to ascertain the true origin of the skins in question and whether or not such skins were legally taken. This investigation did not result in evidence satisfactory to the game and fish department. Consequently they held the skins, and the plaintiffs started this replevin suit.

Upon the first trial the court directed a verdict for the defendants. The plaintiffs appealed, and the opinion of this court appears in 177 Minn. 398, 225 N. W. 435. All of the important law questions involved were settled on that appeal, where it was determined that if the skins which were obtained by shooting and spearing were taken by Indians upon reservations in Wisconsin they were legally taken and should be returned to the plaintiffs. The burden of proof is upon the plaintiffs to show that the skins were so taken. If they fail to produce evidence of this fact sufficient to take the question to the jury, then the presence of these illegally taken skins makes the entire shipment contraband under our statutes, and the defendants are entitled to judgment.

In our opinion the evidence is not sufficient to go to a jury on the question of whether or not these shot and speared skins were taken by Indians upon the reservation, and the court should have directed a verdict for the defendants. It is the contention of the

plaintiffs that these shot and speared skins were among those purchased by Symons from Koeppen and that Koeppen bought them from an Indian by the name of Tebeau, who with another Indian shot, speared, and trapped about 200 muskrats in the fall of 1926. The testimony of Joseph Cohn shows conclusively that he selected the skins which were subsequently seized from at least 1,500 skins that were in the warehouse at Superior. There was some testimony on the part of Symons indicating that these 680 skins were all selected from the skins bought from Koeppen, but a careful analysis of this testimony shows that Symons paid no particular attention to where the skins came from and that Cohn did all of the selecting. As against the plaintiff Cohn's positive testimony that he selected these skins from the 1,500 then in the warehouse, Symons' testimony can be given no weight whatever. Amongst these 1,500 skins were skins bought from various persons in various parts of northern Wisconsin, and there was no attempt by the plaintiffs to show that any of such skins were taken by Indians upon reservations.

There was at least one skin in which upon the first trial a shot was discovered by one of the witnesses while he was testifying. This skin was conceded by Joseph Cohn to be a winter skin, and consequently it could not have been taken by the two Indians in the fall of 1926. Their testimony is positive that the 200 skins which they sold to Koeppen were taken in the fall of 1926 and before November 9 of that year. The expert fur men have no difficulty in distinguishing between fall skins and winter skins. The presence of this one skin in the shipment was sufficient under our statutes to render the entire shipment contraband and subject to seizure by the defendants. G. S. 1923 (1 Mason, 1927) § 5633. There were other shot and speared skins whose taking was not satisfactorily explained.

Additional questions are raised by the appellants, but in view of our disposition of the case it is unnecessary to pass upon them. The order appealed from is reversed and the case remanded with directions to enter judgment in favor of the defendants.

HILTON, J. took no part.