SOLOMON BERGMAN *vs.* ST. PAUL MUTUAL BUILDING ASSOCIATION, No. 1.

July 11, 1882.

Corporations—Cannot impair Rights of Stockholders under Articles of Incorporation.—The articles of incorporation of an association formed under the general laws of the state are its charter, and, subject to the constitution and general laws of the state, its fundamental and organic law. They fix the rights of the stockholders, and are in the nature of a fundamental contract in form between the corporators, and in practical effect between the association and its stockholders, which neither party is at liberty to violate. This can no more be done by by-laws and resolutions adopted by the stockholders than in any other way, the authority to pass by-laws being an authority to pass such only as are consistent with the articles of incorporation—rules and regulations as to the manner in which the corporate powers shall be exercised.

Same—Building Associations—Cancellation of Stock.—Plaintiff is a stockholder in the defendant association. Defendant's eighth article of incorporation provides that "upon the termination of the corporation, the funds and assets of the same, after paying all debts and expenses, shall be divided among the stockholders in such proportion as each may be justly entitled to, in accordance with the number of shares held by each, after deducting all. assessments, fines, dues, and other charges then due by such stockholders." *Held*, that under this article the plaintiff, so long as he performs his duty as a stockholder, is entitled to retain his stock and his place as a stockholder until the termination of the corporation, and to a right to a share of net funds and assets, as in such article provided. So long as he performs his duty as a stockholder, he cannot, save by his own consent, be forced out of the association, as respects the whole or any part of his stock, by any action of the association through its board of directors, or by the combined action of the other stockholders. Hence the association has no authority to retire or cancel any part of his stock against his will and without any default on his part, any such retiring or cancelling being *ultra vires*.

Same—Estoppel.—The facts of this case considered, and *held* not to estop the plaintiff from objecting to the cancellation of his stock by the association.

Plaintiff, who is a member of the defendant association, brought this action in the district court for Ramsey county, to enjoin defend-

ant and its board of directors from cancelling certain shares of stock of defendant belonging to plaintiff, and to have the attempted cancellation by defendant of certain other shares belonging to him declared void.

The case was tried by *Simons*, J., without a jury. It appears from the facts found by the court, that defendant was organized in 1869, with "the object of accumulating funds, to be loaned to its members, to enable them to purchase real estate, build houses, satisfy mortgages, or make such other investments as they may deem proper." The stock is issued at intervals of a year, and each issue is called a series. The par value of each share is $200. The value of the stock is paid in in instalments of one dollar payable in each and every month after the date of issue. The monthly contributions thus paid in, and also all other receipts from loans, are at each monthly meeting loaned to the members of the association, those bidding the highest premium having the preference, and these loans being secured by mortgages on real estate. Each member, being a successful bidder, and offering sufficient security, is entitled to a loan of $200 on each share of stock held by him. The profits from loans are credited to, and divided among, the shares of stock, and the monthly payments are continued until the amount paid in with the profits accrued "shall be sufficient to divide to every $200 of stock the sum of $200, or its equivalent." Under this provision of the by-laws, as the stock of each series reaches the value of $200, it is cancelled, and the cash is paid to the owner of the stock, if he is not a borrower from the association. If he is a borrower, the value is applied in satisfaction of his debt. It appears from the evidence that, under this method of maturing and cancelling stock, when any series matured, there was need of a large amount of cash to pay off the matured stock not borrowed on, that this sum was much larger than the receipts for any one month, and could be obtained only by the accumulation of the funds of the association for several months, thereby depriving the association of the use of such funds during that period, and interfering very materially with its usual business of making loans. To avoid this difficulty, the association undertook to begin the withdrawal and cancellation of stock not borrowed on, at the accrued value some-

time before the same would mature.   In December, 1874, an amendment to the by-laws was duly adopted by the association, authorizing the directors to reserve a portion of the receipts and apply them to the cancellation of stock.   Under this resolution, and by mutual consent, twenty shares of plaintiff's stock were cancelled in August, 1876.   In March, 1877, the association and its board of directors adopted the following resolution: "The directors are instructed to draw lots whenever there is a surplus of redemption money on hand, not called for, and distribute the same to holders of such shares as might be drawn."   On March 2, 1878, the following amendment to the by-laws was adopted: "And the directors shall have power to retire the unpledged shares of any series, and to enforce the withdrawal of the same, at any time after the fourth year from the date of the issue thereof, in such form and manner as they may deem best for the interest of the association; provided said action is ordered or endorsed by the association."   Under these amendments and resolution, the association attempted, in 1880, the withdrawal of fifteen shares of stock belonging to plaintiff.   These shares were issued in September, 1873, and September, 1874.

Judgment was ordered and entered for plaintiff, adjudging the resolution and amendments to the by-laws above mentioned, and the attempted withdrawal and cancellation of plaintiff's stock, to be *ultra vires*, null and void, and restraining defendant from retiring or cancelling any of plaintiff's stock until it shall have matured and become of the value of $200.   From this judgment the defendant appeals.

*Wm. Louis Kelly* and *Wm. S. Moore*, for appellant.

The amendments to the by-laws come within the full and real meaning of the object of the association.   *Came* v. *Brigham*, 39 Me. 35; *Cummings* v. *Webster*, 43 Me. 192; *Inhabitants of Palmyra* v. *Morton*, 25 Mo. 593.

Plaintiff is estopped from objecting to the cancellation of his stock because of the prevalence of the custom for so long a time, because of his acquiescence in the same for four or five years, and because of his having participated in the benefits arising from the cancellation of the stock of others during the same period.   *Lockwood* v. *Mechanics' Nat. Bank*, 9 R. I. 308; S. C. 4 Am. Corp. Cas. 140; *King* v.

*Ashwell,* 12 East, 22; *Morgan* v. *Bank of North America,* 8 Serg. & Rawle, 73; S. C. 11 Am. Dec. 575; *Samuel* v. *Holladay,* Woolworth C. C. 400; S. C. 1 Am. Corp. Cas. 139; *Hodges* v. *N. E. Screw Co.,* 3 R. I. 9; *Kent* v. *Quicksilver Mining Co.,* 78 N. Y. 159, 184; *Hodgson* v. *Earl of Powis,* 1 De Gex, M. & G. 6; *Graham* v. *Birkenhead, etc., Ry. Co.,* 2 McNaghten & Gordon, 146; Green's Brice's *Ultra Vires,* 163.

*I. V. D. Heard,* for respondent.

BERRY, J. Defendant is a corporation, organized under the general laws of this state. Its general purpose is to accumulate funds to be loaned to its members to enable them to purchase real estate and build houses thereon. Commencing on August 2, 1869, it is to continue to exist for not more than 15 years. Its capital stock is divided into shares, for which transferable certificates of stock are issued— any shareholder being permitted to withdraw upon terms prescribed in by-laws. The stockholders are empowered, at general or special meetings, to pass by-laws concerning, among other things, "the general regulation of the business of the corporation," and such as are "needful in carrying out and effecting" its objects. By the eighth article of incorporation, "upon the termination of said corporation the funds and assets of the same, after paying all debts and expenses, shall be divided among the stockholders in such proportion as each may be justly entitled to, in accordance with the number of shares held by each, after deducting all assessments, fines, dues, or other charges then due by such stockholders."

The foregoing matters are all found in the defendant's articles of incorporation. These articles are its charter, and, subject to the constitution and general laws of the state, its fundamental and organic law. Morawetz on Private Corp. §§ 149, 367. Among other things they fix the rights of stockholders. They are in the nature of a fundamental contract, in form between the corporators, and in practical effect between the association and its stockholders—a contract which, as in other cases, neither party is at liberty to violate. This can no more be done through the form of by-laws and resolutions of the stockholders adopted and acted upon, than it can in any other way. The authority to pass by-laws is, as a matter of course,

authority to pass such as are consistent with the articles of incorporation, and not a power to subvert the law of corporate existence. Morawetz on Private Corp. §§ 367, 368; *Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 159. The by-laws of a corporation are only rules and regulations as to the manner in which the corporate powers shall be exercised. Any attempt on the part of defendant, by by-laws or otherwise, to deprive an unconsenting stockholder of a right secured to him by the corporate articles, is in excess of defendant's authority, or, in legal parlance, *ultra vires*.

The application of these views is this: The plaintiff was and is a stockholder in the defendant association. He is therefore entitled to the full benefits of the eighth and other articles of incorporation, and he has by consequence the right to hold his stock, and enjoy all the profits and advantages secured to a stockholder by such articles. That is to say, he is entitled, among other things, to retain his stock and his place as a stockholder until the termination of the corporation, and to a right to his share of the net funds and assets, as in the eighth article provided. He may voluntarily withdraw from the association as respects the whole or a part of his stock, in accordance with the charter and pursuant by-laws. But, save by his consent, so long as he performs his duty as a stockholder, he cannot be forced out of the association, as respects the whole or any part of his stock, by any action of the association through its board of directors, or by the combined action of the other stockholders. It follows that the association has no authority to retire or cancel any part of his stock against his will, and without any default on his part, and that any such retiring or cancelling is, under the articles of incorporation, *ultra vires*. That, through some defect in the plan of its organization,—some unforeseen difficulties,—the association will not work as well as was expected, and will fail of completely accomplishing the purposes of its projectors, is wholly unimportant. That is a matter which should have been thought of when the articles of incorporation were framed, and before the defendant took the stockholders' money. If, through the common fallibility of human judgment, it was not foreseen, the disappointment is not to be remedied at a stockholder's expense, any further than he may be necessarily called upon under the

charter to share the consequences of the common error with his fellow shareholders.

In the case at bar, the plaintiff being in no default, the defendant has, without his consent, attempted to retire and cancel, and in fact has in form retired and cancelled, 15 shares of its stock held and owned by plaintiff, and it threatens to take the same course with other shares of which he is the owner and holder. It follows, from what we have before said, as held by the trial court, that these acts done and threatened are, under the articles of incorporation, *ultra vires* and void as to the plaintiff.

But it is contended that though the cancellation of the plaintiff's shares of stock is not authorized under the articles of incorporation, the plaintiff has estopped himself from objecting to it. It seems that he acquired two shares of his stock, issued in September, 1873, on December 19, 1876; 35 shares, issued in September, 1874, between August, 1876, and November, 1877. In December, 1874, the association, by an amendment to its by-laws, authorized the board of directors to set aside certain moneys for the cancellation of certain shares of stock. In August and November, 1876, by mutual agreement between the plaintiff and the association, 20 shares of stock of which he was owner were surrendered and cancelled, the association paying and plaintiff receiving an agreed sum of money therefor. At that time no stock of any stockholder had been forcibly retired. Any surrenders of stock theretofore made were made, as in the case of plaintiff, by the consent and agreement of the stockholders. No argument would appear to be needed to show that there is nothing about plaintiff's voluntary surrender of the 20 shares mentioned which could in these circumstances, by any proper application of the law of estoppel, bar him from objecting to an attempt on the part of the association to force him to surrender other shares of stock. He has not acquiesced, or given the association to understand that he proposes to acquiesce, in any attempt of that kind; and it is further to be observed that the language of the by-law amendment referred to is not such as to show that any forced cancellation of stock was necessarily contemplated by it. The trial court properly found no estoppel.

In reference to the resolution adopted by the association on March 3, 1877, and the by-law amendment adopted March 2, 1878, under which, together with the by-law amendment of December, 1874, before mentioned, the board of directors, on January 3, 1880, undertook to accomplish the forced cancellation of which plaintiff complains, we discover nothing, either in the findings of the court or the evidence, showing that plaintiff in any way assented to the application of the resolution and by-law amendments to himself or to any other stockholder, or estopped himself in any way from objecting to such application to his own stock whenever attempted. If other stockholders saw fit voluntarily to submit to the cancellation of their stock, even under the influence, to a greator or less extent, of the resolution and amendments, there was no reason why he should object or refrain from sharing in the benefits (if any) accruing to the association. By failing to object for them, he in no way forfeited his rights to object for himself when the occasion should require. In addition to these considerations, it is to be observed that plaintiff's shares of stock involved in this action were all issued before either of the by-law amendments mentioned, or the resolution of March 3, 1877, was adopted, and that they were all acquired by plaintiff before the adoption of the by-law amendment of March, 1878, which appears to be the only one expressly authorizing a forced cancellation of stock. Hence it cannot be claimed (even if the claim could possess any importance,) that the plaintiff's stock was issued or taken by him upon any understanding that he could be forced to surrender it.

Lest it should be thought that the matter had escaped our notice, we call attention to the fact that it appears to be understood by the court and parties that, unless the cancellation of plaintiff's stock is sustained, the association will have the right to retire the same when it reaches what is called maturity, or a value of $200 per share. This is one among a number of things in this case which we do not altogether understand, but which we have not felt called upon to investigate, as the parties appear to take no objection in reference to it.

This disposes of all the matters which we deem it necessary to discuss in this opinion, and the result is that the judgment is affirmed.