HENRY et al. v. MARKESAN STATE BANK et al.

No. 9755.

Circuit Court of Appeals, Eighth Circuit.

Jan. 5, 1934.

Rehearing Denied Feb. 16, 1934.

John D. Sullivan, of St. Paul, Minn. (Fowler, Carlson, Furber & Johnson, of Minneapolis, Minn., on the brief), for appellants.

Edwin B. Murphy, of Minneapolis, Minn. (D. L. Simenstad, of Minneapolis, Minn., on the brief), for appellees.

Before GARDNER, WOODROUGH, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

May 12, 1919, J. E. Barr Pickling & Preserving Company became organized as a corporation by full compliance with the laws of the state of Minnesota. Its original capital stock was $300,000, and the purpose stated in its articles of incorporation was the following:

"The purpose for which this corporation is formed and the general nature of its business shall be and is to manufacture, buy, sell, raise, grow, import, export and generally deal in all kinds of vegetables, fruits, and grains and the products thereof. To buy, sell, raise and otherwise acquire hogs, cattle, sheep, and all kinds of livestock, and to produce, buy, and sell all kinds of dairy products. To produce, manufacture, buy, sell, import, export, and generally deal in canned, bottled and bulk foods of all kinds, and any products used in the manufacture thereof as component parts. To buy, sell, lease, erect, and construct canneries, salting stations, storerooms, warehouses, cold storage plants and all necessary buildings, structures, and machinery which may be conducive to the interests of said corporation. To buy, sell, lease, mortgage and exchange and generally deal in real property, improved or unimproved, and to do all and everything necessary, suitable, and proper for the accomplishment of any of the purposes or attainments of any of the objects or for the furtherance of any of the powers hereinbefore set forth, and to do any other act or acts, thing or things, incidental or appurtenant to or coming out of or connected with the aforesaid business or powers, or any part or parts thereof."

June 18, 1925, it filed an amendment to its charter increasing its capital stock to $750,000. Proof of publication covering this amendment was duly filed June 27, 1925. March 4, 1926, a special meeting of the stockholders was held for the purpose of considering an amendment to the articles of incorporation limiting the purpose and business of the corporation to that of canning vegetables and fruits and the doing of other things incidental thereto. An amendment to this general effect was voted by a majority in number and amount of the stockholders of said corporation, there being at that time 3,000 shares of outstanding stock, of which 2,010 were present and voted in favor of such amendment. At a prior meeting of stockholders, held December 28, 1925, it had been voted to change the name of the corporation to J. E. Barr Packing Corporation and to increase the capital stock to 10,000 shares of preferred stock of the par value of $100 each, and 10,000 shares of common stock without nominal or par value. The result was that an amendment was duly filed in the office of the secretary of state of Minnesota on the 18th day of March, 1926. The certificate of the secretary of state, setting out the proposed amendment, discloses the change of name and authorized capital stock as aforesaid, and the following purpose clause:

"The objects and nature of the business of this corporation shall be and are the canning of vegetables."

The aforesaid amendment was duly executed, acknowledged, filed, and published as by law provided, but no affidavit of publication of the certificate of this amendment to the articles of incorporation was filed in the office of the secretary of state. The corporation continued its business under the changed name until it became insolvent in 1932. A receiver was appointed July 1, 1932. He also became trustee in bankruptcy. His testimony, uncontradicted, is that claims aggregating more than $340,000 have been allowed against the corporate estate and that its only assets remaining are about $200. The appellee bank in its own behalf and on behalf of all other creditors filed complaint against J. E. Barr Packing Corporation, praying an accounting and the appointment of a receiver to collect, for the creditors of the defendant corporation, the constitutional liability of its stockholders. A hearing was held in due course and the court found that the relief

prayed should be granted and ordered an assessment of $100 on each and every share of the capital stock of the defendant corporation having par value, and the sum of $50 on each share of such stock having no par value. The stock in question is that issued by J. E. Barr Packing Corporation.

The contention of appellees, receiver, and creditors, is that the stockholders are assessable under the purpose clause contained in the original articles of incorporation because the amendment which sought to convert the corporation into one engaged exclusively in manufacturing is void (a) because of the failure to file an affidavit of publication with the secretary of state; (b) the amendment of the purpose clause was ultra vires for lack of unanimous consent by the corporate stockholders; (c) the amendment of the purpose clause is void because under the controlling laws of Minnesota a corporation is not empowered to effect, by amendment, a change from a corporation not exclusively manufacturing to one exclusively so; (d) because, even if the amendment be adjudged valid, nevertheless the purpose stated is not confined exclusively to manufacturing.

A further contention is that the assessment of the stock issued by the J. E. Barr Packing Corporation is proper even though its issue was unauthorized because of the invalidity of the amendment.

The points urged by appellant stockholders are:

(1) That the amendment was properly and legally made and was not invalidated by the failure to file proof of publication with the secretary of state.

(2) That even though there were technical irregularities in reference to the amendment in question, nevertheless the creditors did business with the corporation while operating under the amended articles, which was a de facto, if not a de jure, corporation so operating, and are estopped from denying the legality of the amendment, which can be questioned only by the state of Minnesota in a quo warranto proceeding.

(3) That the purpose stated in the amendment converted the corporation into one engaged exclusively in manufacturing, the stockholders of which are not subject to the assessment ordered.

(4) That the no-par stock of the J. E. Barr Packing Corporation, if assessable at all, was not properly assessed on the basis of $50 per share.

Article 10, section 3, of the Constitution of Minnesota, then in force, provides that:

"Each stockholder in any corporation, excepting those organized for the purpose of carrying on any kind of manufacturing or mechanical business, shall be liable to the amount of stock held or owned by him."

The applicable provision respecting the publication of the certificate of original incorporation has found its way into section 7445 of Mason's Minnesota Statutes, 1927, thus:

"Every such certificate of incorporation shall be published in a qualified newspaper in the county of such principal place of business, for two successive days in a daily, or for two successive weeks in a weekly newspaper. Upon filing with the secretary of state proof of such publication, its corporate organization shall be complete."

The pertinent provisions in this regard respecting amendments is found in section 7472 of Mason's Minnesota Statutes, 1927, as amended by Laws Minn. 1929, c. 275, to wit:

"*Amendments to Certificates of Incorporation.*—The certificate of any incorporation [of any corporation] now or hereafter organized and existing under the laws of this state may be amended so as to change its corporate name, or so as to increase or decrease its capital stock, or so as to change the number and par value of the shares of its capital stock, or in respect to any other matter which an original certificate of a corporation of the same kind might lawfully have contained, by the adoption of a resolution specifying the proposed amendment, at a regular meeting or at a special meeting called for that expressly stated purpose, in either of the following ways: (1) by majority vote of all its shares, if a stock corporation; or if not, (2) by majority vote of its members; or, in either case (3) by a majority vote of entire board of directors, trustees, or other managers within one year after having been thereto duly authorized by specific resolution duly adopted at such meeting of stockholders or members, and causing such resolution to be embraced in a certificate duly executed by its president and secretary, or other presiding and recording officers, under its corporate seal, and approved, filed, recorded, and published in the manner prescribed for the execution, approval, filing, recording, and publishing of a like original certificate."

Counsel for appellees sum up their argument in the following language:

"In affirming the decision it need only be

found that (1) Failure to file the affidavit of publication resulted in an uncompleted amendment which was, because thereof, invalid; or (2) The amendment of the purpose clause was (a) fundamental and (b) violated the contractual right of stockholders, and was, therefore, ultra vires and void, or (3) No power exists in the State of Minnesota giving a corporation power to so amend its articles as to permit its change from a corporation not exclusively manufacturing to one exclusively so, or (4) A corporation, the sole purpose of which is the canning of vegetables is not one exclusively manufacturing in nature."

We shall first consider Nos. 1 and 4. And first as to No. 4. The sole corporate purpose is thus stated in the amendment:

"The objects and nature of the business of this corporation shall be and are the canning of vegetables."

To decide whether this language is sufficient to stamp the corporation sought to be created by the amended articles as one engaged exclusively in manufacturing, it is necessary only to determine the fair meaning of the word "canning" as accepted and generally understood in trade and commerce. It is firmly established in Minnesota that the articles of a manufacturing corporation are the sole criterion for determining the purposes for which the corporation is formed, and unless it fairly appears therefrom that the exclusive purpose was for manufacturing, and such incidental business as may be reasonably necessary to effectuate the purpose, stockholders are liable for the debts of the corporation to the amount of the stock held by them. Merchants' National Bank v. Minnesota Thresher Manufacturing Co., 90 Minn. 144, 95 N. W. 767; Meen v. Pioneer Pasteurizing Co., 90 Minn. 501, 97 N. W. 140; Kremer v. Tellin, 154 Minn. 267, 191 N. W. 735; West Duluth Land Co. v. Northwestern Textile Co., 176 Minn. 588, 224 N. W. 245.

The word "canning" is thus defined in Funk and Wagnall's New Standard Dictionary:

"The act, process, or business of preserving fruits, vegetables, or meats, by partial cooking, or other process, and hermetically sealing in tin cans, glass jars," etc.

In older editions of Webster's Dictionary the verb "can" is defined as signifying:

"To preserve by putting in sealed cans. Canned goods, a general name for fruit, vegetables, meat, or fish, preserved in hermetically sealed cans."

Appellees cite Webster's New International Dictionary (1929) as follows:

"Can, v. t., Canning—To put in a can or cans; to preserve by putting in sealed cans; to tin."

Mr. Barr, president of the defendant corporation, testified that:

"The process of canning vegetables is the assembling of various vegetables and mixing them with condiments such as salt, sugar, etc., and putting them into cans and processing them so that they will keep.

"Mr. Sullivan: Tell the Court a little more about that processing, what do you do?

"The Court: Well, let us not go into that. He has stated it generally. I do not think it is necessary to go into the details of how that processing is carried on. I have seen a good many manufactories where they are canning fish, and so on."

The Supreme Court of Minnesota defines a manufacturer thus:

"A manufacturer is one who by labor, art or skill transforms raw material into some kind of a finished product or article of trade." Graff v. Minnesota Flint Rock Co., 147 Minn. 58, 179 N. W. 562, 563, cited with approval in Nortmann-Duffke Co. v. Federal Crushed Stone Co., 167 Minn. 333, 209 N. W. 17.

The Minnesota rule of construction is thus announced in Sibley County Bank v. Crescent Milling Co., 172 Minn. 394, 396, 215 N. W. 521, 522:

"It is true that in general, with respect to Minnesota corporations, liability is the rule and nonliability the exception. Arthur v. Willius [44 Minn. 409, 46 N. W. 851], supra; Carnegie Dock & Fuel Co. v. Kensington Mills, Inc. [152 Minn. 258, 188 N. W. 270], supra. But, as to manufacturing corporations, nonliability is just as definitely the constitutional rule and liability the constitutional exception. So there is nothing which justifies a resort to strained or hypertechnical construction in order to arrive, if possible, at a conclusion in favor of liability. The ordinary rules for interpreting contracts and other writings obtain."

Under this rule, which we regard as reasonable and just, we think it fairly appears from the language of the proposed amendment that the exclusive purpose of the corporation, if its articles were so amended, was to engage in the business of manufacturing.

Coming now to specification No. 1 of appellees' concluding argument, supra, we should be slow to hold, under the facts and circumstances of this case, that the mere fail-

ure to file the affidavit of publication rendered the amendment, filed with the secretary of state March 18, 1926, invalid. It will be observed that section 7472 of Mason's Minnesota Statutes, supra, does not in terms, nor by necessary implication, make the filing of such proof essential to the completion and validity of an amendment, as does section 7445 with respect to the original certificate of incorporation. Furthermore, the Supreme Court of Minnesota looks with disfavor upon deciding the substantial rights of parties contrary to their mutual understanding as to the nature of their corporate contract "on the ground of a technical omission to file the affidavit of publication." Christian v. Bowman 49 Minn. 99, 104, 51 N. W. 663, 664; Finnegan v. Noerenberg et al., 52 Minn. 239, 53 N. W. 1150, 18 L. R. A. 778, 38 Am. St. Rep. 552; Hause v. Mannheimer, 67 Minn. 194, 69 N. W. 810.

In Christian v. Bowman, supra, there was evidence that the defendant corporators attempted to perfect a corporate organization under the name of Mouse River Land Company. They signed, filed, and published articles of incorporation in due form, but failed to file the affidavit of publication required by statute. The situation was altogether the same as that before us, except that, there, original articles of incorporation were involved with respect to which proof of publication was expressly required. The action was brought against the individual stockholders to recover on promissory notes on the ground that, the incorporation being incomplete, and, therefore, invalid, they were liable as copartners. The court held as follows:

"It would perhaps have been a serious question for the consideration of the court, under the evidence in the case, if proper findings had been made, whether the defendants, for the purposes of this case, should not have been held to be a corporation de facto. So that if the plaintiff in these transactions dealt with the company as a corporation, and the deed, notes, and mortgage were given and received as corporate contracts by and between the parties, the individual members ought not to be charged with a joint liability, as partners or otherwise, contrary to the mutual understanding of all parties as to the nature of the contract, solely on the ground of a technical omission to file the affidavit of publication.

"And it may be, if the record were such as to bring the case within the rule in respect to parties contracting with de facto corpora-

tions, and under which they are estopped to deny the corporate existence of an association claiming to be and acting as a corporation, a more equitable result might have been reached in this case. But that question is not fairly in the case, and cannot be considered under the assignments of error. No reference is made in the pleadings to the existence of a corporation."

In Finnegan v. Noerenberg, 52 Minn. 239, 53 N. W. 1150, 1151, 18 L. R. A. 778, 38 Am. St. Rep. 552, the holding was that:

"'Color of apparent organization under some charter or enabling act' does not mean that there shall have been a full compliance with what the law requires to be done, nor a substantial compliance. A substantial compliance will make a corporation de jure. But there must be an apparent attempt to perfect an organization under the law. There being such apparent attempt to perfect an organization, the failure as to some substantial requirement will prevent the body being a corporation de jure; but, if there be user pursuant to such attempted organization, it will not prevent it being a corporation de facto."

In Hause v. Mannheimer, 67 Minn. 194, 69 N. W. 810, it is held that one who recognized, dealt with, and became a stockholder in a de facto corporation is "estopped from questioning its existence, or asserting that it never was legally organized, by reason of a failure to comply with the statute in filing with the secretary of state proof of the publication of its articles of incorporation, as required." Compare Olson v. State Bank, 67 Minn. 267, 69 N. W. 904. Creditors dealing with a corporation are equally bound to take notice of the powers given, and of the limitations imposed by its charter. State ex rel. v. Mortgage Security Co., 154 Minn. 453, 457, 192 N. W. 348.

From the foregoing it would appear that, under the Minnesota decisions, unless some fundamental defect compels a contrary view, the corporation, under the attempted amendment, had a de facto existence which stockholders and creditors alike would be estopped to deny so far as the technical omission to file the affidavit of publication with the secretary of state is concerned.

This brings us to a consideration of the charges against the validity of the amendment which sought to make a radical change in the purpose of the corporate organization.

By article 10, § 3, of the Constitution of Minnesota, in force when this corporation was

organized and this amendment was filed, two distinct kinds of corporations for profit were referred to, one with so-called stockholders' double liability and the other (manufacturing or mechanical) without such double liability. West Duluth Land Company v. Northwestern Textile Company, 176 Minn. 588, 589, 224 N. W. 245.

Appellees attack the validity of the attempted amendment of the purpose clause of the original articles upon two major grounds:

"1. No power exists in the State of Minnesota giving a corporation power to so amend its articles as to permit its change from a corporation not exclusively manufacturing to one exclusively so.

"2. The amendment of the purpose clause was (a) fundamental and (b) violated the contractual right of stockholders, and was therefore ultra vires and void."

Taking up the first of these major attacks upon the validity of the amendment, to wit, that, under the laws of Minnesota, a corporation is without power so to amend its articles as to change from a corporation not exclusively manufacturing to one exclusively so, we must have recourse to the progressive legislation in Minnesota bearing upon that question. As stated by counsel for appellees in their brief, chapter 11 of the Laws of 1873, specifically authorized the organization of manufacturing corporations, but contained no provision for amendment. Chapter 8 of the Laws of 1879 was an amendment to chapter 11 of the Laws of 1873, and provided for amending articles (manufacturing) adopted under said chapter 11, by a majority vote of stockholders, provided that "no such new or amended articles shall change the general nature of its (corporate) business." This was carried forward into the General Statutes of 1894. In the revision of 1905 provisions for amending articles of incorporation were grouped together under section 2871, now found in Mason's Minnesota Statutes, 1927, as section 7472, hereinabove quoted. It is quite evident that this statutory prohibition against change by amendment in the general nature of corporate business applies only to manufacturing corporations. They are not permitted thus to expand into general mercantile corporations, while organized to conduct an exclusively manufacturing business.

The Supreme Court of Minnesota in West Duluth Land Co. v. Northwestern Textile Co., 176 Minn. 588, 224 N. W. 245, as we read its opinion, so construes the applicable statutes.

There was there an attempt to amend the articles of a manufacturing and mechanical corporation so as to permit it to engage in mercantile and trading business. This would subject the stockholders to so-called double liability, from which they were immune under the original charter. Thereafter the corporation became insolvent and its receiver petitioned for authority to make assessment on stockholders. This petition was denied by the trial court, and the Supreme Court of Minnesota, in affirming this order, had occasion to review the statutory history involved. It said:

"L. 1873, p. 121, c. 11, was enacted for the purpose of carrying into effect the constitutional immunity provision relieving stockholders of manufacturing and mechanical corporations from double liability. State ex rel. Clapp v. Minnesota T. Mfg. Co., 40 Minn. 213, 41 N. W. 1020, 3 L. R. A. 510.

"L. 1875, p. 53, c. 17, provided for amendments of the articles of such corporation 'in any respect which might have been lawfully made a part of such original articles.' A provision permitting any business, other than manufacturing and mechanical, of such a corporation could not have been in the original articles. State ex rel. Clapp v. Minnesota T. Mfg. Co., 40 Minn. 213, 41 N. W. 1020, 3 L. R. A. 510. L. 1873, p. 121, c. 11, was amended by L. 1879, p. 22, c. 8, by providing that no such new or amended articles shall 'change the general nature of its business.'

"R. L. 1905, § 2871, permits amendments 'which an original certificate of a corporation of the same kind might lawfully have contained.' It was not the purpose to thereby make a change in the preceding law. Report of Statute Rev. Comm. 1905, p. 24. This same provision appeared in L. 1913, p. 338, c. 247, now found as G. S. 1923, § 7472. We agree with the trial court in holding that the words 'of the same kind' preclude an amendment of the articles of the defendant corporation as was attempted. * * *

"There has been a manifest intent shown by the legislature to promote and foster manufacturing and mechanical corporations and to safeguard and protect a stockholder from a loss of his constitutional immunity from double liability (his contract right) whether the proposed amendment carried by a vote of 51 or 99 per cent. of the stock."

This assessment was resisted by stockholders, and the court in its decision protected their contract rights. There is nothing in this opinion, nor in any statute which has been

brought to our attention, which would limit the power of a general trading corporation to convert itself into an exclusively manufacturing corporation. "The articles may be amended in any respect which might have been lawfully made a part of such original articles." General mercantile powers cannot be made a part of the charter of an exclusively manufacturing company—one not subject to stockholder assessment. But manufacturing may legally be made a business purpose of a general trading corporation—in fact was so included in the purpose clause of the J. E. Barr Pickling & Preserving Company. No question of power under the laws of Minnesota was involved in the change from general trading to manufacturing by the amendment under consideration. The rights of stockholders, and perhaps of creditors, may be affected, but that brings us to an examination of another phase of the controversy.

■■ Accordingly, we consider next the point urged by appellees that the amendment of the purpose clause was void because it was fundamental in nature and violated the contractual rights of stockholders. The general principles of law governing this proposition are not new and are well and explicitly stated in the decisions of the Minnesota Supreme Court. Articles of association of a corporation are its fundamental and organic law. They fix the rights of stockholders and are in the nature of a contract between the incorporators which neither party is at liberty to violate. Bergman v. St. Paul Mutual Building Association, 29 Minn. 275, 13 N. W. 120. Alterations which change the nature and purposes of the corporation or of the enterprise for which it was created are fundamental, and amendments which effect such a fundamental change, to become binding upon the stockholders, must be accepted by the incorporators. Mower v. Staples, 32 Minn. 284, 20 N. W. 225; State ex rel. v. Mortgage Security Co., 154 Minn. 453, 192 N. W. 348; West Duluth Land Co. v. Northwestern Textile Co., supra. It will be recalled that the latter case concerned an attempt, by majority vote, to convert a manufacturing corporation, without stockholders' liability, into one with a mercantile and trading business, subject to such liability, whereby a greater hazard, in this respect, would have been imposed upon all stockholders. To the same effect are the holdings of courts and textwriters: Clearwater v. Meredith, 1 Wall. 25, 17 L. Ed. 604; Chicago City Railway Co. v. Allerton, 18 Wall. 233, 21 L. Ed. 902;

Thompson on Corporations (3d Ed.) vol. 1, par. 399, pp. 501, 502; Morawetz on Private Corporations, par. 645, p. 613; 7 Ruling Case Law, par. 72, p. 97.

■■ It is conceded that the resolution purporting to authorize this amendment was adopted at a special meeting of stockholders by a majority vote only, and that the charter contained neither an express nor implied provision conferring such authority upon a majority. It is true that a stockholder who has not assented to an amendment of the charter, materially changing the corporate objects, may not be liable for assessments resulting therefrom. Such is not the situation here presented; but, in any event, failure to authorize an amendment of this nature by unanimous vote is not necessarily fatal. Assent may be evidenced in ways other than by vote in stockholders' meetings. It may be made by consent either express or implied. 1 Thompson on Corporations (3d Ed.) par. 400, p. 503. While directors have no authority in the first instance to accept for the corporation an amendment to the charter, "yet, if they do accept an amendment, and the corporation proceeds under it, the stockholders may be bound on the principle of acquiescence." 1 Thompson on Corporations, par. 408, p. 513. Compare Venner v. Atchison, T. & S. F. R. Co. (C. C. Kan.) 28 F. 581. Acceptance of an amendment may be implied from user. It need not be proved by a vote of the stockholders. 1 Thompson on Corporations, par. 412, p. 520.

"A stockholder may estop himself from taking any advantage of the unlawful or irregular acceptance of an amendment by the corporation or by the majority stockholders. Such estoppel may be raised either by express or implied acquiescence in the acceptance of the amendment. Generally he will be bound and his suit will be barred by any act on his part that would indicate an acceptance, or an intention on his part to accept the amendment." 1 Thompson on Corporations, par. 413, p. 521.

"A stockholder may be estopped from objecting to an amendment by his express or implied acquiescence therein. Any acts indicating an acceptance by him of the amendment bind him. * * * Acquiescence may sometimes grow out of his silence or delay under circumstances that called on him to dissent if he so intended. * * * Laches will not be tolerated by the courts, especially where important interests are involved.

Stockholders are presumed to have assented to a change in the charter." 2 Cook on Corporations (8th Ed.) par. 503, p. 1675.

That a change of this nature may be made by the implied as well as the express assent of the stockholders is held in Chicago City Railway Company v. Allerton, 18 Wall. 233, 21 L. Ed. 902, and it is intimated that a subsequent ratification or assent might be equally effective. Beyond question the change in name and purpose was ratified by the stockholders. Their acquiescence through a period of more than six years amounted to acceptance. During all this period no dissent appears. They accepted the stock issued under the charter as amended. They acquiesced in the changed operation of the corporate business. Naturally they are not complaining now. Palmer v. Bank of Zumbrota, 72 Minn. 266, 75 N. W. 380. Nor are the creditors in any position of greater advantage. So far as appears they dealt with the J. E. Barr Packing Company under its amended charter in presumed reliance upon its existence as a manufacturing corporation. There are no debts shown to be outstanding which were contracted prior to the amendment. They received constructive notice, at least, of the change. Publication was made. The amendment was duly filed and certified. The notes to the Markesan State Bank were executed by the J. E. Barr Packing Corporation March 11, 1930. This suit is brought against the corporation by that name. Evidently the rule with respect to parties contracting and dealing with de facto corporations applies here. Christian v. Bowman, 49 Minn. 99, 103, 51 N. W. 663; Hause v. Mannheimer, 67 Minn. 194, 69 N. W. 810; State ex rel. v. Mortgage Security Co., 154 Minn. 453, 457, 192 N. W. 348.

Our conclusion, then, is that the J. E. Barr Packing Corporation became at least a de facto manufacturing corporation by the filing of its amendment of March 18, 1926; that by their subsequent course of dealings over a period of more than six years both stockholders and creditors are estopped to deny the corporate existence as thus amended; that no ground, therefore, exists for the assessment of stockholders as petitioned and ordered. For this reason it becomes unnecessary to pass upon the other errors assigned. The order and the judgment appealed from is reversed and the case remanded to the district court with directions to set aside the order of assessment made, and to dismiss the bill of complaint. It is so ordered.