## FRED DIEDRICK AND OTHERS v. JOHN W. HELM AND OTHERS.[1]

June 2, 1944.

No. 33,627.

[1]Reported in 14 N. W. (2d) 913.

484

Leonard, Street & Deinard and Hyman Edelman, for appellants.

James E. O'Brien, Kimball B. DeVoy, and G. Aaron Youngquist, for respondents other than John H. Field, George B. Norris, and Minneapolis Savings and Loan Association.

James G. Blaine McKusick, for respondent Minneapolis Savings and Loan Association.

Oscar A. Brecke, for respondent John H. Field.

PETERSON, JUSTICE.

This is a representative action brought by plaintiffs as minority stockholders of The Minneapolis Savings and Loan Association of Minneapolis, Minnesota (herein referred to as the association), to recover certain amounts received by the P. M. Endsley Company (herein referred to as the agency) as commissions as agent in procuring fire and tornado insurance. The claim is that the association is entitled to the commissions upon the grounds that the defendants, other than the association, through the agency, in breach of fiduciary duty, deprived the association of the opportunity to procure the insurance itself as agent, and that because of such breach of duty these defendants are chargeable for its benefit as constructive trustees of the commissions received by the agency. Other relief was sought in the court below, but the attrition of the litigation has left the single claim stated.

The case is here on a voluminous record and briefs. There are 27 assignments of error, some of which contain subdivisions. It is not necessary, nay, due regard for space prohibits our doing so, to state in detail the numerous claims made by the parties. The facts will be stated with sufficient adequacy to disclose the true

picture and to show the applicability of the rules by which decision here is controlled.

Plaintiffs and the individuals named as defendants are stockholders of the association. The individual defendants also are directors of both the association and the agency. These defendants admit that they occupy a fiduciary relation to the association. About 75 percent of the business from which the commissions were received by the agency was in connection with properties upon which the association made loans secured by real estate mortgages. Because of that circumstance, plaintiffs claim that the procuring of the insurance was a business opportunity open to the association, of which it was wrongfully deprived by the other defendants.

The association is a financial corporation with powers limited and defined by the statutes relating to savings and loan associations. It was organized in 1891. Its articles of incorporation state that the nature of its business is as follows:

"ARTICLE FIRST—* * * The general nature of its business and objects will be to accumulate a fund, by the savings of the members thereof, and to loan out of said fund to the members only, and to do the general business of a local building and loan association, as prescribed by the laws of the State of Minnesota.

"Also the purchase and holding of and sale of real estate taken on forfeiture foreclosure and otherwise, and to make such other investment of its funds as may be deemed advisable by the Board of Directors."

The articles of incorporation also provide that the management of the business and the government of the corporation shall be vested in its board of directors and officers, and that the annual meeting of the stockholders shall be held on the third Saturday of December in each year.

During its entire corporate existence, the association has had a set of by-laws for its internal government. Section 23 thereof provides:

"All borrowers are required to cause the buildings on their mortgaged property to be insured for the benefit of the Association

against fire and tornado in an amount and in some company to be designated by the Secretary. * * *."

Subsequent to 1936, the by-law was amended so as to provide that the amount of the insurance and the company should be such as was "satisfactory to the Association" instead of being "designated by the Secretary."

The by-laws also constitute the secretary the managerial officer in charge of the association's business.

From its incorporation to the time of trial, the association has conducted its business under its articles of incorporation and its by-laws. Its business has consisted of accepting deposits from its members and of lending the funds accumulated from such deposits to its members only upon security of first mortgages on real estate.

One P. M. Endsley was the first secretary of the association. From 1891 to 1917, he acted as the agent for insurance companies also and as such agent procured insurance for the association's borrowers to cover buildings upon properties upon which the association made loans. Endsley retained the commissions earned in procuring the insurance. Evidently, as we shall show later, the association's business and Endsley's income were small during the greater part of this period, and he acted as an insurance agent in placing insurance in connection with the association's loans to afford him some additional income to supplement his earnings as secretary of the association.

After the business of the association and the commissions earned from procuring insurance in connection with its loans had attained considerable proportions, the association twice considered the advisability of engaging in the insurance agency business and thus earning for itself the commissions in connection with that business. In 1911, the question was brought up for consideration at the January and February meetings of the stockholders. At the January meeting a resolution was adopted that any employe accepting a rebate or perquisite in connection with the business of the association and retaining the same should be discharged, after a hearing, by the board of directors. The resolution was referred to a com-

mittee to report at the February meeting. At that meeting the members of the committee presented majority and minority reports. The majority report provided in part as follows:

" "* * * that we find the salary paid the Sec'y during the last year and for the past 20 years has been a very nominal one and that the practice of the Sec'y in engaging in the Insurance business and collecting fees from the borrower for services has been a benefit to the Association in reducing the expenses of the Assn. and that any sudden change from the present plan would result in increased expenses without any additional gain and would recommend no change at the present time, but that the salary be fixed for one year thus leaving the adjustment of salary, Insurance and expenses to the Directors at their next annual meeting."

The minority report signed by Mr. F. C. Harvey, a lawyer and at one time judge of the probate court of Hennepin county, provided in part as follows:

"(7) That all fees and commissions received by the Secretary or any other employee of the Association for fire insurance on property in which the Association is interested as mortgagee or owner shall be turned into the treasury of the Association and become part of its assets."

The minority report was adopted by the directors. The matter was brought up again at the March meeting. A resolution was adopted rescinding the action with respect to requiring the secretary to turn into the treasury of the association commissions received by him on fire insurance on property in which the association was interested. The resolution recited that subsequent to the February meeting "we have further considered said fire insurance business and find there are *serious legal questions* involved in carrying into effect" the report adopted at the February meeting. Thereupon a motion was adopted "That the Secretary retain all fire insurance business and commissions and his salary be fixed at $1,800 per annum." The vote was nine in favor and four against the motion. Judge Harvey voted with the majority in favor of the

adoption of the motion. Mr. P. M. Endsley did not vote on the motion. Thus the matter rested until 1917.

At the August 1917 meeting of the board of directors a committee was appointed "to investigate the insurance questions, as to the course to pursue in the future, and to report at the next meeting; that the salaries of the secretary and assistant secretary remain as they are until the next meeting." At the September meeting, the committee presented a report as follows:

"After careful investigation, we find in the judgment of the committee, and we so recommend, that the Association is by statutory provision absolutely prohibited from acting as agent or receiving premiums on insurance written."

The recommendations of the committee were unanimously adopted. Thereafter the matter was never considered by the directors.

Shortly after such action by the association's board of directors, P. M. Endsley organized the P. M. Endsley Company (the agency) for the purpose of engaging in business as an insurance agency. It had 100 shares of stock, of which 97 were issued to Mary E. Endsley, P. M. Endsley's wife, and one each to P. M. Endsley, Willis Endsley, his brother, and Frederick L. Endsley, his nephew. A few days after the agency was organized, P. M. Endsley died. His widow acquired his share. She continued to hold 98 shares of stock until her death in 1921. Shortly thereafter, Willis Endsley and Frederick L. Endsley purchased 23½ shares each from her estate, giving them 24½ shares each. In 1925, all the outstanding stock of the agency was retired, including that held by the Mary E. Endsley estate, which was purchased for the purpose, and reissued as follows: To Willis Endsley, 27 shares; to Frederick L. Endsley, 27 shares; to F. R. Chase, a director, 10 shares; and to 12 other directors, 3 shares each. Each stock recipient paid $100 par value for each share of stock issued to him with his own personal funds.

In 1932, the stock of the agency was again retired and reissued to the stockholders in proportions of 6 2/3 shares each. Each stockholder paid the par value of the stock in cash for the shares issued

to him. The stock is held under an escrow arrangement whereby, if a director dies or fails of reëlection, his stock is retired and reissued to his successor director. This stockholding arrangement has prevailed since 1932.

The agency operates with its own capital, its own employes, and in its own quarters. At the time of trial, it had seven employes, whose salaries it paid. It owned its own desks, typewriters, supplies, and stationery. It paid all the expenses incident to the operation of its business. It subleased from the association, at a reasonable rental, space in the rear of its premises. In the earlier years of the agency, it had three employes who devoted part time to working for the association whose salaries were borne proportionately by the association and the agency.

The agency is able to obtain a large amount of insurance business from the association's borrowers because of the association's requirement that the borrowers carry fire and tornado insurance on properties upon which the association loans money upon mortgaged security; in fact, 75 percent of the agency's business is derived through its contacts with the association. It goes without saying that these contacts afford the agency an opportunity to obtain business that is not open to others. The agency keeps records of all insurance carried by the association and the dates of the expiration of all policies. It keeps in touch with borrowers in order to obtain the renewals of such insurance. It keeps full and complete records of all insurance written by it. While the business arrangement between the association and the agency is of great advantage to the latter in affording it opportunities to obtain insurance business, the arrangement is of great advantage also to the association, in that the agency maintains a careful check on all policies to see that they afford the association the coverage which it desires in connection with its business, and also in adjusting losses, of which there are several hundred each year.

Insurance for the association's borrowers with suitable policy provisions to protect the association's interest as mortgagee is procured by the agency from an insurance company selected, after

canvassing the field, because of its ability to meet the association's needs. Arrangements are made to afford protection to all concerned. The court below made findings, amply sustained by the evidence, that the association's directors acquired stock ownership of the agency and the control and management of its affairs in complete good faith, without intent or plan or conspiracy to defraud or injure the association or to divert its money or property, and "that in acquiring, retaining, holding and dividing said stock of said P. M. Endsley Company [the agency], and in furthering its business and in supervising its operation, defendants, and each of them, have acted at all times in the best interests of said Association."

The association ever since its organization has been under the constant supervision of the state commissioner of banks and his statutory predecessors, who have made periodical examinations of its business to determine whether the association conducted its business in compliance with law and in accordance with sound business principles. Those examinations disclosed nothing which, in the judgment of the state officials, required correction. On the contrary, the management and conduct of the association's business was approved.

The growth of the association and of the agency was gone into with considerable thoroughness. In 1891, the association had, in round figures, assets of $102,000, earnings of $2,600, and reserves of $131; in 1926, its assets were $7,048,000, its earnings $381,000, and its reserves $404,000; and in 1941, it had assets of $20,640,000, earnings of $966,000, and reserves of $1,128,000. All these items had increased substantially before the trial. It does not definitely appear what P. M. Endsley's earnings were or what his commissions on insurance procured amounted to in 1891 and the years following. It definitely appears that his compensation as secretary was small. It is a fair estimate that the commissions received from insurance did not exceed $400 or $500 per year. In 1926, the agency earned as gross commissions $17,527 and paid in dividends $8,850; in 1933, its gross commissions were $17,833 and dividends $9,900; and in 1941, its gross commissions were $32,140 and its dividends

$18,066. These amounts also had increased at the time of trial. The total gross commissions for the years 1933 to 1941 were shown to be $214,200, and the total dividends paid during that time amounted to $148,898.

Considerable effort was made by plaintiffs to show that the directors were Frederick L. Endsley's dummies, voting as he directed, and that consequently the will of the association had no voice in its affairs. In this connection it was claimed that the matters in dispute were not brought before a stockholders meeting for their consideration and that the only notice of such meetings was the published notice required by statute. The claim that the directors were dummies seems to be based upon the fact that Frederick L. Endsley, the present secretary of the association, in 1939 and in 1940, solicited proxies which he and some employes of the association voted to elect new directors to take the place of the defendants Field and Norris, both of whom as directors voted at the 1917 meeting in favor of the report which recognized that the association had no right to engage in the insurance agency business or to receive any premiums for insurance on properties in which it was interested—that, in effect, P. M. Endsley was entitled to engage in such business and to retain the commissions earned for himself, and in favor also of a resolution subleasing to P. M. Endsley space in the association's premises to engage in such business. Norris died after the action was commenced, and the action has been dismissed as to him. Field now takes a position contrary to that taken by him as a director, namely, that the association is entitled to engage in the insurance agency business and to receive the profits therefrom and that the action of the other defendants, except the association, wrongfully deprived it of such profits.

The trial court found that the association is not and never has been authorized to engage in the insurance business or to receive commissions from insurance written; that engaging in such business was not essential to its business; that it was not incidental to its business; and that the business of writing insurance or of operating an insurance agency is in no way competitive with or in-

jurious to the business of the association. It further found that all meetings of the directors and stockholders were regularly called and held, and that the individual defendants have fully performed all duties to the association imposed upon them as its directors and have at all times exercised their judgment with respect to the performance thereof in complete good faith and in the best interests of the association. As a conclusion of law it found that the plaintiffs were not entitled to a recovery.

■ The relationship of directors to the corporation is a fiduciary one imposing upon them the duty to exercise their powers as directors solely for the benefit of the corporation and its stockholders. Implicit in such duty is that of not exercising their powers as directors to serve their own personal interests at the expense of the corporation and its stockholders. Risvold v. Gustafson, 209 Minn. 357, 296 N. W. 411; *Id.* 207 Minn. 359, 292 N. W. 103; Lake Harriet State Bank v. Venie, 138 Minn. 339, 165 N. W. 225. Directors have no more right to divert corporate opportunities and make them their own than they have to appropriate corporate property for their own use. We do not deem it necessary to make an all-inclusive definition of what constitutes a "corporate opportunity." For present purposes, we shall state the rule only so far as the necessities of the instant case require. On the one hand, a director's duty of loyalty and devotion to the corporation and the stockholders is unyielding in its demands; on the other hand, he is not bound to act in noncorporate matters for the benefit of the corporation and its stockholders to the exclusion of self-interest, and he may avail himself of all opportunities lying outside the field of his duties as a director.

"* * * The test seems to be whether there was a specific duty, on the part of the officer sought to be held liable, to act or contract in regard to the particular matter as the representative of the corporation—all of which is largely a question of facts." 3 Fletcher, Cyc. Corp. (Perm. ed.) § 862.

As said in Northern Oil & Gas Co. v. Birkeland, 164 Minn. 466, 479, 203 N. W. 228, 205 N. W. 449, 206 N. W. 380, 383:

"It is not enough that a confidential or fiduciary relation exists between two parties but there must be involved some specific fund or property to which the one owes the other some duty. Thus if one is directed to buy a certain piece of property for another, the fiduciary relation exists between the two as to that property, but as to other properties he is free to deal at his own expense and for his own use."

The fundamental question in each case is whether the officer or director of a corporation has permitted his self-interest to conflict with the interests of the corporation. Where a business opportunity is in the line of the corporation's activities, especially if intended for it, the opportunity, as one in which it has a legitimate interest or expectancy, belongs to the corporation and not to its officers or directors, and if an officer or director diverts the opportunity and embraces it as his own, he is chargeable as a constructive trustee for the benefit of the corporation with all the profits and benefits received therefrom by him; but, where the opportunity is one in which the corporation has no interest or expectancy, the opportunity is not a corporate, but a personal, one, and belongs to the director with the right to treat it as his own. Loft, Inc. v. Guth, 23 Del. Ch. 138, 2 A. (2d) 225, sustained, Guth v. Loft, Inc. 23 Del. Ch. 255, 5 A. (2d) 503; Ontjes v. MacNider, 232 Iowa 562, 5 N. W. (2d) 860; Solimine v. Hollander, 128 N. J. Eq. 228, 16 A. (2d) 203; Blaustein v. Pan American P. & T. Co. 263 App. Div. 97, 31 N. Y. S. (2d) 934; 3 Fletcher, Cyc. Corp. (Perm. ed.) §§ 861-862, and Supp. As held in the Solimine case, in an elaborate opinion reviewing the pertinent authorities, a business opportunity is not a corporate one (128 N. J. Eq. at pp. 246-247, 16 A. [2d] at p. 215):

"* * * (a) wherever the fundamental fact of good faith is determined in favor of the director or officer charged with usurping the corporate opportunity, or (b) where the company is unable to avail itself of the opportunity, or (c) where availing itself of the opportunity is not *essential* to the company's business, or (d) where the accused fiduciary does not exploit the opportunity by the employment of his company's resources, or (e) where by embracing

the opportunity personally the director or officer is not brought into direct competition with his company and its business. It will be observed that all of the foregoing elements are stated disjunctively and it would therefore seem that the absence of any one of them is sufficient to defeat such claim of corporate opportunity as is made in this case."

The fact that an officer or director, through his connection with the corporation, gained knowledge of a noncorporate opportunity does not bar him from acquiring it individually. Colorado and Utah Coal Co. v. Harris, 97 Colo. 309, 49 P. (2d) 429; Solimine v. Hollander, *supra,* 128 N. J. Eq. at pp. 254-255, 16 A. (2d) at pp. 218-219, and the cases there cited.

A corporation can have no interest or expectancy in transactions extraneous to the corporation's business. Where a corporation declines, because of legal barriers, to avail itself of an opportunity, Thilco Timber Co. v. Sawyer, 236 Mich. 401, 210 N. W. 204; or it is the settled policy of the corporation not to engage in a particular line of business, Lancaster Loose Leaf Tobacco Co. v. Robinson, 199 Ky. 313, 250 S. W. 997; Bump Pump Co. v. Waukesha Foundry Co. 238 Wis. 643, 300 N. W. 500; or it has declined the opportunity for business reasons, Lincoln Stores, Inc. v. Grant, 309 Mass. 417, 34 N. E. (2d) 704; or the opportunity is not available to the corporation either because a party refuses to deal with it or because the corporation sought, but without success, to obtain it, Bisbee v. Midland Linseed Products Co. (8 Cir.) 19 F. (2d) 24; Pioneer O. &. G. Co. v. Anderson, 168 Miss. 334, 151 So. 161; or in some other instances which might be mentioned, the opportunity is one in which the corporation has no legitimate interest or expectancy and may be embraced by an officer or director as his own. In the Thilco Timber Co. case, *supra,* the directors of a corporation decided that the corporation could not *legally* acquire a tax title to land held by it and another as cotenants, and thereupon two of its directors acquired the title with the corporation's knowledge. In an action to hold them as constructive trustees the court said (236 Mich. 404, 210 N. W. 205):

"* * * Under these circumstances there was no duty resting on either Sawyer or Rollins [the two directors] to act for their corporation in acquiring this tax title, and that is the test as to their liability. There being no such duty they were as free to acquire the tax title as they would have been if they had been strangers to the corporation. In view of these undisputed and controlling facts, the rule invoked by the plaintiff as to the duty and liability of directors and agents of a corporation has no application."

The cited case is like the instant one. Here, as in the cited case, the directors decided in 1917 that the association could not legally act as insurance agent or receive commissions earned on insurance in which it was interested; in effect, they decided that the business opportunity presented by the insurance business was not open to it and that it had no interest or expectancy in such business. In that situation, P. M. Endsley was free to embrace the opportunity for himself. But here the case is stronger in favor of the officer and director, because the association took into consideration the opportunity thus presented to Endsley in fixing his salary and arranging for him and his successors to operate the insurance business as a sublessee in its business headquarters.

It affirmatively appears here that P. M. Endsley, the agency, and the association's directors did not exploit the opportunity to engage in the insurance business as agent by employment of the association's resources; that engaging in such business was not necessary to the association's business as a savings and loan association; and that by engaging in the insurance business none of the parties mentioned came into competition or conflict with the association.

The finding of the fundamental fact of the good faith of all concerned is sustained by the evidence. So far from suffering, the association's savings and loan business grew and prospered under the circumstances disclosed.

The association had no interest or expectancy in the business of conducting an insurance agency, under the rules stated, for the further reason that by Article 23 of its by-laws the association had put the act of engaging in such business outside the scope of the

association's business and beyond the powers of its officers and directors to engage in it. The plain meaning of the provision of the by-law that the borrowers should procure the insurance was that they should procure the insurance through regular insurance agents, with the equally plain implication that, since the insurance was to be so procured, the association itself should not procure the insurance for them, and consequently should not conduct an insurance agency in placing insurance on properties on which it held mortgages.

The office of a by-law is to establish rules for the internal government of the corporation. Bergman v. St. Paul Mut. Bldg. Assn. 29 Minn. 275, 13 N. W. 120. By-laws have the same force and effect as provisions of the charter or articles of incorporation and must be obeyed by the corporation, its directors, officers, and stockholders. Borgards v. Farmers' Mut. Ins. Co. 79 Mich. 440, 44 N. W. 856; J. P. Lamb & Co. v. Merchants' Nat. Mut. F. Ins. Co. 18 N. D. 253, 119 N. W. 1048; Kavanaugh v. Commonwealth Trust Co. 223 N. Y. 103, 119 N. E. 237; Kent v. Quicksilver Min. Co. 78 N. Y. 159; Hawkins Realty Co. v. Hawkins State Bank, 205 Wis. 406, 236 N. W. 657. A by-law is permanent and continuing in nature and must be observed until legally changed. Weatherly v. Medical & Surgical Society, 76 Ala. 567; Griffith v. Klamath Water Assn. 68 Or. 402, 137 P. 226; North Milwaukee Town Site Co. v. Bishop, 103 Wis. 492, 79 N. W. 785, 45 L. R. A. 174. The by-law in question is still in force; it still prevents the association from having any interest or expectancy in the business of writing insurance.

■ Most of the individual defendants became directors of the agency in 1925. Some became such directors afterward. By becoming directors of the agency, the individual defendants were guilty of no breach of fiduciary duty to the association; they did not thereby deprive it of the business opportunity of engaging in the insurance business as agent. Both through its by-laws and the action of its board of directors in 1917, by which it was decided that the association could not legally engage in the insurance business as agent, the association determined, so far as it was concerned,

that it had no business interest or expectancy in the insurance business. When P. M. Endsley first engaged in that business and when the agency was organized to do so, it was settled that the insurance business was not a business opportunity of the association and that Endsley and the agency as his successor in interest could embrace the opportunity as their own for their exclusive benefit. The legality of the directors' acts is to be judged not as of the time they became directors of the agency, but as of the prior time when the association determined any right to the opportunity adversely to itself. The right of an officer or director of a corporation to appropriate a business opportunity for himself depends upon the circumstances present when the opportunity arose without regard to events subsequently occurring. Solimine v. Hollander, 128 N. J. Eq. 228, 249, 16 A. (2d) 216. The association can base no right to the business opportunity in question upon the fact that its directors became directors of the agency after it had parted with all right to claim the opportunity.

■ Aside from the claim that the association has been unlawfully deprived of a legitimate business opportunity, plaintiffs contend that the association is entitled to recover whether or not the directors' act of engaging in the insurance business be deemed in performance or in violation of their duties as such. The rule is well settled, as claimed by plaintiffs, that any profit accruing from an agency belongs to the principal whether it results from the agent's performance or violation of duty. Doyen v. Bauer, 211 Minn. 140, 300 N. W. 451; Schick v. Suttle, 94 Minn. 135, 102 N. W. 217. But the rule applies only where the transaction giving rise to the profit is within the sphere of the agent's fiduciary duty. See, Bartleson v. Vanderhoff, 96 Minn. 184, 104 N. W. 820. It has no application here, because the opportunity of engaging in the insurance business did not belong to the association, but to P. M. Endsley and later to the agency; it was outside the fiduciary relationship between the association and its directors. As has been pointed out, the opportunity belonged to the agency as its own; it was entitled to whatever benefits flowed therefrom.

■ It is true, as contended by plaintiffs, that directors, at the election of the corporation as the party aggrieved by the wrong, may be held liable, under rules applicable to all fiduciaries, either for diversion of corporate assets, that is, for a money judgment for the value of what was diverted, or as constructive trustees with respect to the venture in which the assets were wrongfully used, and its resulting profits. Raymond Farmers Elev. Co. v. American Surety Co. 207 Minn. 117, 290 N. W. 231, 126 A. L. R. 1351; Goodhue Farmers' Warehouse Co. v. Davis, 81 Minn. 210, 83 N. W. 531. It makes no difference in such a case that the corporation's assets were misused and the profits therefrom realized in lines of endeavor *ultra vires* the corporation. Memphis & Arkansas River Packet Co. v. Agnew, 132 Tenn. 265, 177 S. W. 949, L. R. A. 1916A, 640. The rule does not apply here, because the association's assets and opportunities were not diverted by the directors. Since nothing was taken from the association, there is no basis for a liability predicated upon a misappropriation. See, Solimine v. Hollander, *supra,* (128 N. J. Eq. at pp. 252-253, 16 A. [2d] at pp. 217-218).

■ The furnishing of information by the association to the agency concerning prospects for insurance did not constitute a diversion of either its property or a business opportunity belonging to it. The furnishing by one corporation to another, having common directors, of information advantageous to the latter's business and which relates to matters in which the former has no business interest or expectancy does not constitute a diversion of its assets or business opportunities. See, Solimine v. Hollander, *supra.*

■ Nor are the directors chargeable with the commissions earned by the agency as secret profits. It is plain that the association through its directors consented to the arrangement under which its officers and directors acted in like capacities for the agency. Two parties, no matter how diverse their interests, may employ a common agent; an agent will be allowed to serve two masters if both consent. James E. Carlson, Inc. v. Babler, 144 Minn. 125, 174 N. W. 824.

■ There is no basis for the contention that the directors of the association were dummy directors of its secretary, Frederick L. Endsley. In 1911, the majority voted at the February meeting against the Endsleys by voting to approve the minority report, to the effect that P. M. Endsley was not entitled to engage in the insurance business and that the association was entitled to all commissions earned by him in that business. They changed their vote at the March meeting only because they had become satisfied that the association could not legally engage in such business. In 1917, they took the same position for the same reason. The fact that Frederick L. Endsley in 1939 and 1940 succeeded in obtaining proxies to elect two directors to succeed Field and Norris does not stamp either the successor directors or their associates or their predecessors as dummies of Frederick L. Endsley.

■ It is also urged that the stockholders were not given notice *by mail* of the stockholders meetings and that they thereby were deprived of all opportunity to participate in the election of its directors and to take action with respect to the matters here complained of. The meetings were held at the time provided in the articles of incorporation. Published notice thereof was given as required by statute (Minn. St. 1941, § 51.19 [Mason St. 1940 Supp. § 7770-29]). Absent the statute, no further notice than that afforded by the articles of incorporation was necessary; the provision in the articles of incorporation as to the time of the meetings itself was notice thereof to the stockholders. Morrill v. Little Falls Mfg. Co. 53 Minn. 371, 55 N. W. 547, 21 L. R. A. 174. The statutory published notice is additional and cumulative. The stockholders received the notice to which the law entitled them; they are not entitled to more than that.

We have not reached the question whether a savings and loan association may engage in the business of an insurance agent as incidental to its principal business. We take judicial notice that such associations do not do so. Such associations are under the *constant supervision* of the commissioner of banks. The uniform construction of the statute by that official that they do not possess

the power to engage in the insurance agency business and the uni-. form practice of such associations in conformity with such construction are convincing proof of the absence of such power. The orders and directions of that official are to be heeded. See, Thomas v. Taylor, 224 U. S. 73, 32 S. Ct. 403, 56 L. ed. 673; Medford Trust Co. v. McKnight, 292 Mass. 1, 197 N. E. 649; LaMonte v. Mott, 93 N. J. Eq. 229, 107 A. 462, 116 A. 269. The directors of the association here were not guilty of breach of duty because of the fact that they did not engage in the insurance business; they were under no duty to risk the association's very corporate existence by doing so contrary to what appears to have been the settled law governing the scope of its operations. After all, it is the duty of the directors to see that the corporation keeps within its corporate powers and obeys the law. See, Jones v. Morrison, 31 Minn. 140, 16 N. W. 854. The fact that the commissioner of banks found nothing in the affairs of the association requiring correction is quite persuasive of their legality and regularity. Our conclusion is that the findings of the trial court are sustained by the evidence and that its conclusions are according to law. There should be an affirmance.

Affirmed.

Mr. Justice Streissguth took no part in the consideration or decision of this case.